No. 22-50775

# In the United States Court of Appeals for the Fifth Circuit

La Union del Pueblo Entero; Friendship-West Baptist Church; Anti-Defamation League Austin, Southwest, and Texoma; Southwest Voter Registration Education Project; Texas Impact; Mexican American Bar Association of Texas; Texas Hispanics Organized for Political Education; JOLT Action; William C. Velazquez Institute; James Lewin; Fiel Houston, Incorporated,

*Plaintiffs-Appellees,*

*v.*

John Scott, In His Official Capacity as Texas Secretary of State; Warren K. Paxton, In His Official Capacity as Attorney General of Texas; State of Texas,

*Defendants-Appellants,*

consolidated with
No. 22-50777

Mi Familia Vota; Marla Lopez; Marlon Lopez; Paul Rutledge,

*Plaintiffs-Appellees,*

*v.*

Gregory W. Abbott, In His Official Capacity as the Governor of Texas; John B. Scott, In His Official Capacity as Secretary of State of Texas; Warren K. Paxton, In His Official Capacity as Attorney General of Texas,

*Defendants-Appellants,*

---

DELTA SIGMA THETA SORORITY, INCORPORATED; HOUSTON
AREA URBAN LEAGUE, THE ARC OF TEXAS; JEFFREY LAMAR
CLEMMONS,

*Plaintiffs-Appellees*,

*v.*

GREGORY WAYNE ABBOTT, IN HIS OFFICIAL CAPACITY AS THE
GOVERNOR OF TEXAS, WARREN KENNETH PAXTON, JR., IN HIS
OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF TEXAS,

*Defendants-Appellants*,

---

MI FAMILIA VOTA; MARLA LOPEZ; MARLON LOPEZ; PAUL
RUTLEDGE,

*Plaintiffs-Appellees*,

*v.*

GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF
TEXAS; JOHN B. SCOTT, IN HIS OFFICIAL CAPACITY AS TEXAS
SECRETARY OF STATE; WARREN KENNETH PAXTON, JR., IN HIS
OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS,

*Defendants-Appellants*,

---

consolidated with
No. 22-50778

---

LA UNION DEL PUEBLO ENTERO; ET AL,

*Plaintiffs*,

*v.*

GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR
OF TEXAS; ET AL,

*Defendants*,

OCA-Greater Houston; League of Women Voters of Texas; REVUP-Texas; Workers Defense Action Fund,
*Plaintiffs-Appellees*,

*v.*

John B. Scott, In His Official Capacity as Texas Secretary of State; Ken Paxton, Texas Attorney General,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

# OPENING BRIEF FOR DEFENDANTS-APPELLANTS

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

William F. Cole
Assistant Solicitor General
William.Cole@oag.texas.gov

Counsel for Defendants-Appellants

## Certificate of Interested Persons

No. 22-50775, *La Union del Pueblo Entero v. Scott*
*Consolidated with* Nos. 22-50777 and 22-50778

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Defendants-Appellants,

as governmental parties, need not furnish a certificate of interested persons.

/s/ William F. Cole
WILLIAM F. COLE
*Counsel of Record for*
*Defendants-Appellants*

## Statement Regarding Oral Argument

Defendants-Appellants request oral argument. This consolidated appeal involves a wide-ranging challenge by more than two dozen plaintiffs to more than three dozen separate provisions of the Texas Election Integrity Act of 2021, Act of Aug. 31, 2021, 87th Leg., 2d C.S., ch. 1, 2021 Tex. Sess. Law Serv. 3873 ("S.B. 1"). The district court misapplied this Court's precedent and misinterpreted Texas law to conclude that the Texas Secretary of State and Texas Attorney General enforce the challenged provisions of the Texas Election Code, and, consequently, that plaintiffs had overcome the Secretary's and Attorney General's sovereign immunity and established standing to sue them. Given the complexity of the record, the volume of intertwining provisions of the Texas Election Code at issue, and the array of overlapping precedents of this Court, oral discussion of the facts and applicable precedent would likely aid the Court's decisional process.

# Table of Contents

Page

Certificate of Interested Persons ...................................................................... i

Statement Regarding Oral Argument ............................................................... ii

Table of Authorities ....................................................................................... iv

Introduction ...................................................................................................... 1

Statement of Jurisdiction ................................................................................. 3

Issues Presented ............................................................................................... 3

Statement of the Case ...................................................................................... 4

    I.    Factual Background ............................................................................ 4

        A.  The administration of elections in Texas ................................. 4

        B.  The 2020 election ..................................................................... 8

        C.  The 2021 passage of Senate Bill 1 ......................................... 10

        D.  Senate Bill 1 ............................................................................ 11

    II.  Procedural History ........................................................................... 17

        A.  Plaintiffs' operative complaints .............................................. 17

        B.  The State Defendants' motions to dismiss .............................. 19

        C.  The district court's orders ...................................................... 21

Summary of the Argument .............................................................................. 23

Standard of Review ......................................................................................... 24

Argument ......................................................................................................... 25

    I.    Plaintiffs' Section 1983 and VRA Claims Against the Secretary and Attorney General Are Barred by Sovereign Immunity. ........................... 25

        A.  Plaintiffs' section 1983 claims against the Secretary of State and Attorney General do not satisfy the *Ex parte Young* exception. .......... 26

        B.  The VRA does not abrogate State sovereign immunity. ................... 50

    II.  Plaintiffs Lack Standing to Sue the Secretary or the Attorney General ..... 50

Conclusion ...................................................................................................... 56

Certificate of Service ...................................................................................... 57

Certificate of Compliance .............................................................................. 57

# Table of Authorities

Page(s)

**Cases:**

*In re Abbott,*
  628 S.W.3d 288 (Tex. 2021) (orig. proceeding) ................................................10

*In re Abbott,*
  956 F.3d 696 (5th Cir. 2020) ........................................................................47

*Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.,*
  851 F.3d 507 (5th Cir. 2017) ........................................................................27

*Ala. State Conference of the NAACP v. Alabama,*
  949 F.3d 647 (11th Cir. 2020)........................................................................50

*Alden v. Maine,*
  527 U.S. 706 (1999)........................................................................................25

*California v. Texas,*
  141 S. Ct. 2104 (2021) ........................................................... 2, 51, 53, 54

*Campaign Legal Ctr. v. Scott,*
  49 F.4th 931 (5th Cir. 2022)..........................................................................52

*City of Austin v. Paxton,*
  943 F.3d 993 (5th Cir. 2019)................................................................ *passim*

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013)........................................................................53-54

*Cohen v. Beneficial Indus. Loan Corp.,*
  337 U.S. 541 (1949) ........................................................................................3

*El Paso Elec. Co. v. Tex. Dep't of Ins.,*
  937 S.W.2d 432 (Tex. 1996) .........................................................................48

*In re Gee,*
  941 F.3d 153 (5th Cir. 2019) (per curiam)..................................................51, 55

*Google, Inc. v. Hood,*
  822 F.3d 212 (5th Cir. 2016) ........................................................................49

*Haverkamp v. Linthicum,*
  6 F.4th 662 (5th Cir. 2021) (per curiam) .....................................................25

*In re Hotze,*
  610 S.W.3d 909 (Tex. 2020) (orig. proceeding) .............................................9

*Jackson v. City of Hearne,*
  959 F.3d 194 (5th Cir. 2020) ........................................................................24

*K.P. v. LeBlanc*,
  627 F.3d 115 (5th Cir. 2010) ............................................................. 25

*Leonard v. Martin*,
  38 F.4th 481 (5th Cir. 2022) ................................................................ 3

*Lewis v. Scott*,
  28 F.4th 659 (5th Cir. 2022) ........................................................ *passim*

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................... 51

*Mi Familia Vota v. Abbott*,
  977 F.3d 461 (5th Cir. 2020) ............................................................ 30

*Morris v. Livingston*,
  739 F.3d 740 (5th Cir. 2014) ............................................................ 48

*NiGen Biotech, LLC v. Paxton*,
  804 F.3d 389 (5th Cir 2015) ............................................................. 48

*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) .............................................. 20, 50, 54

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) (en banc) ........................................... 48

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993) ............................................................................. 3

*Paxton v. Longoria*,
  646 S.W.3d 532 (Tex. 2022) ............................................................. 49

*Planned Parenthood Ctr. For Choice v. Abbott*,
  141 S. Ct. 1261 (2021) ...................................................................... 47

*Raj v. La. State Univ.*,
  714 F.3d 322 (5th Cir. 2013) ............................................................ 20

*Richardson v. Flores*,
  28 F.4th 649 (5th Cir. 2022) ........................................................ *passim*

*Russell v. Jones*,
  49 F.4th 507 (5th Cir. 2022) ............................................................. 25

*Smith v. State*,
  328 S.W.2d 294 (Tex. 1959) (per curiam) ....................................... 48

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..................................................................... 51, 52

*State v. Hollins*,
  620 S.W.3d 400 (Tex. 2020) (per curiam) ............................. 9, 49, 50

*State v. Stephens*,
  Nos. PD-1032-20, PD-1033-20, 2021 WL 5917198 (Tex. Crim.
  App. Dec. 15, 2021)........................................................................46
*In re State*,
  602 S.W.3d 549 (Tex. 2020) .........................................................10
*Tellabs, Inc. v. Makor Issues & Rts. Ltd.*,
  551 U.S. 308 (2007) ......................................................................24
*Tex. All. for Retired Ams. v. Scott*,
  28 F.4th 669 (5th Cir. 2022) ..................................................*passim*
*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) .................................................*passim*
*Tex. Democratic Party v. Hughs*,
  860 F. App'x 874 (5th Cir. 2021) ................................................45
*Tex. Democratic Party v. Hughs*,
  997 F.3d 288 (5th Cir. 2021) ...........................................30, 31, 45
*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .................................................................52
*Twitter, Inc. v. Paxton*,
  26 F.4th 1119 (9th Cir. 2022) ......................................................49
*United States v. Mississippi*,
  380 U.S. 128 (1965).....................................................................50
*West Virginia v. United States*,
  479 U.S. 305 (1987).....................................................................50
*Ex parte Young*,
  209 U.S. 123 (1908) ..............................................................*passim*

**Constitutional Provisions, Statutes, and Rules:**

Tex. Const.:
  art. IV, § 22..................................................................................48
  art. V, § 21...................................................................................48
  art. V, § 21...................................................................................48
28 U.S.C.:
  § 1291 ............................................................................................3
  § 1331............................................................................................3
29 U.S.C. § 794.................................................................................18, 19

42 U.S.C.:

    § 1983 ................................................................*passim*

    § 12131 et seq. ...........................................................18, 19

52 U.S.C.:

    § 10101 ........................................................................... 19

    § 10308(d) .......................................................................50

    § 10301 ................................................................*passim*

    § 10508 ................................................................*passim*

Tex. Elec. Code:

    § 1.0015 ......................................................................... 11

    § 11.002(a)(6) ...................................................................5

    § 12.001 ...........................................................................5

    § 12.031 ...........................................................................5

    § 13.047 ...........................................................................4

    §§ 13.071-13.073 ............................................................5

    § 15.028 ......................................................................... 11

    § 16.0332 ....................................................................... 41

    § 16.0332(a) .................................................................. 11

    § 16.0332(a-1) ............................................................... 11

    §§ 18.001-18.013 ............................................................5

    § 18.065(e), .................................................................. 12

    § 18.065 (f) ................................................................... 12

    § 18.068(a) ................................................................... 12

    § 31.001(a) ................................................................. 4, 54

    § 31.002 ...........................................................................4

    § 31.002(a) ...............................................................21, 37

    § 31.002(b) ................................................................... 21

    § 31.003 ..................................................................... 4, 54

    § 31.004 ...........................................................................4

    § 31.006 ......................................................................... 21

    § 31.006(a) ...........................................................12, 43, 44

    § 31.012(d) ................................................................... 21

    § 31.012(d) ............................................................... 40, 41

    § 31.031 ...........................................................................5

    § 31.043 ...........................................................................5

§ 31.128 ...................................................................................... 16
§ 31.129 ...................................................................... 16, 47, 48
§ 31.129(b) ............................................................................... 45
§ 31.130 ...................................................................................... 16
§ 32.002 ........................................................................................ 6
§ 32.006 ........................................................................................ 6
§ 32.031 ........................................................................................ 6
§ 32.071 ........................................................................................ 6
§ 32.072 ........................................................................................ 6
§ 32.075 ...................................................................................... 42
§ 32.075(a) ................................................................................... 6
§ 32.075(c) ................................................................................... 6
§ 32.075(g) ................................................................................. 13
§ 32.115 ........................................................................................ 4
§ 33.001 ........................................................................................ 6
§ 33.002 ........................................................................................ 6
§ 33.003 ........................................................................................ 6
§ 33.008 .................................................................................. 4, 21
§ 33.0015 ..................................................................................... 6
§ 33.051(g) ................................................................................. 13
§ 33.056(a), (e) .......................................................................... 13
§ 33.061(a) ................................................................................. 13
§ 34.005(a) ................................................................................. 44
§ 41.002 ........................................................................................ 6
§ 42.006(a) ................................................................................... 5
§ 43.001 ........................................................................................ 5
§ 43.002 ........................................................................................ 5
§§ 43.002-43.004 ...................................................................... 29
§ 43.003 ........................................................................................ 5
§ 43.031(b) ................................................................................. 12
§ 64.009(f) ................................................................................. 15
§ 64.031 ...................................................................................... 15
§ 64.034 ...................................................................................... 15
§ 64.0322 ................................................................................... 16

§ 66.004 ........................................................................................... 21, 41

§§ 82.001-82.004 .................................................................................... 7

§ 82.005 ................................................................................................... 7

§ 83.001 ................................................................................................. 30

§ 83.001(c) .............................................................................................. 7

§ 83.002 ............................................................................................ 7, 30

§ 83.005 ................................................................................................. 30

§ 84.001(b) ............................................................................................ 13

§ 84.001(c) ............................................................................................ 36

§ 84.011(a)(3-a) .................................................................................... 14

§ 84.035(b) ............................................................................................ 14

§ 84.0111 .............................................................................................. 15

§ 85.001 ................................................................................................... 7

§ 85.001(a) .............................................................................................. 7

§ 85.005 ................................................................................................. 12

§§ 85.031-85.033 .................................................................................... 7

§ 85.061(a) ............................................................................................ 13

§ 85.062(b) ............................................................................................ 13

§ 86.001 ................................................................................................. 37

§ 86.001(a) ....................................................................................... 7, 31

§ 86.001(b) .............................................................................................. 7

§ 86.001(c) .............................................................................................. 7

§ 86.001(f) ...................................................................................... 14, 38

§ 86.001 (f-1) ........................................................................................ 38

§ 86.001 (f-2) ........................................................................................ 38

§ 86.002(a) .............................................................................................. 7

§ 86.002(g) ............................................................................................ 14

§ 86.005(d) ............................................................................................ 36

§ 86.006(a-2) .................................................................................. 13, 38

§ 86.006(e) ............................................................................................ 12

§ 86.007 ................................................................................................... 7

§ 86.010(e) ............................................................................................ 16

§ 86.013(b) ............................................................................................ 16

§ 86.015(c)(4) ....................................................................................... 14

§ 86.0105 .................................................................................... 16

§ 87.001 ............................................................................... 8, 33

§ 87.002(a) ..................................................................................... 8

§ 87.002(c) ..................................................................................... 8

§ 87.021 ....................................................................................... 14

§ 87.027(i) ..................................................................................... 8

§ 87.027(a) ..................................................................................... 8

§ 87.027(d) ................................................................................... 14

§ 87.027(j) ..................................................................................... 8

§ 87.041(a) ..................................................................................... 8

§ 87.041(b) ............................................................................ 8, 38

§ 87.041(b)(8) ............................................................................. 14

§ 87.061 ......................................................................................... 8

§ 87.0411 ..................................................................................... 14

§ 124.002(c) ................................................................................. 13

§ 273.021(a) ................................................................................. 45

§ 276.004 ..................................................................................... 16

§ 276.015 ..................................................................................... 16

§ 276.016 ..................................................................................... 16

§ 276.017 ..................................................................................... 16

§ 276.018 ..................................................................................... 16

§ 276.019 ..................................................................................... 16

Tex. Local Gov't Code:

   ch. 81 .......................................................................................... 5

**Other Authorities:**

Tex. Gov. Proclamation No. 41-3752, 45 Tex. Reg. 5449, 5456 (2020) ................... 9

Texas Election Integrity Act of 2021, Act of Aug. 31, 2021, 87th Leg.,

   2d C.S., ch. 1, 2021 Tex. Sess. Law Serv. 3873 .......................................... *passim*

*Election Advisory No. 2020-14*, Tex. Sec'y of State (April 6, 2020),

   https://tinyurl.com/mr9kmxpk ......................................................................... 9

# Introduction

This consolidated appeal arises from a far-reaching and expansive challenge to more than three dozen provisions of the Texas Election Integrity Act of 2021, Act of Aug. 31, 2021, 87th Leg., 2d C.S., ch. 1, 2021 Tex. Sess. Law Serv. 3873 ("S.B. 1"). Launched by S.B. 1's opponents four days before it was even signed into law, in this consolidated lawsuit a constellation of plaintiffs seeks to enjoin several state and local officials from enforcing provisions in almost every article of S.B. 1, arguing that large swaths of S.B. 1 violate the rights of minorities and voters with disabilities under the United States Constitution and federal law. But this appeal does not concern the merits of plaintiffs' claims. Instead, it presents two fundamental, threshold jurisdictional issues: sovereign immunity and standing. Applied here, both doctrines preclude plaintiffs' attempt to name Texas Secretary of State John B. Scott and Texas Attorney General Ken Paxton ("State Defendants") as defendants in their challenge to S.B. 1. The district court erred in holding otherwise.

The district court first erred by concluding that plaintiffs could overcome the State Defendants' sovereign immunity by relying on the *Ex parte Young*, 209 U.S. 123 (1908), exception, which permits federal courts to enjoin "ongoing violation[s] of federal law" by state officials who have a "sufficient connection [to] the enforcement of the challenged act." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) (internal quotation omitted). Both the Secretary and the Attorney General lack the requisite "connection" to the enforcement of the challenged provisions of S.B. 1. The provisions at issue include portions of the Texas Election Code that concern voter registration, the conduct and security of elections, the conduct of election

officials, vote-by-mail procedures, voter assistance, and the definition of new election-law offenses. But the Election Code entrusts the on-the-ground enforcement of these provisions to local county-level officials—such as voter registrars, commissioners courts, election judges, early voting clerks, early voting ballot boards, and district or county attorneys—not the Secretary or Attorney General. The Secretary's "general duties" under the Election Code to prescribe forms, promulgate rules, and report violations of law cannot supply the missing link under this Court's precedents because plaintiffs' alleged injuries are tied to the enforcement of S.B. 1's substantive provisions by local officials—not to the Secretary's prescription of a form, promulgation of a rule, or report of a legal violation. *See Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 673 (5th Cir. 2022) ("*TARA*"). And because the Attorney General lacks the power under Texas law to unilaterally institute criminal prosecutions or seek penalties under S.B. 1's civil-penalty provision, those purported mechanisms for enforcement cannot bridge the enforcement gap either.

For similar reasons, plaintiffs cannot establish the traceability element of the Article III standing test. Because neither the Secretary nor the Attorney General enforces the challenged provisions of S.B. 1, plaintiffs cannot "assert an injury that is the result of [the] statute's actual or threatened *enforcement*, whether today or in the future." *California v. Texas*, 141 S. Ct. 2104, 2114 (2021). That jurisdictional defect deprived the district court of jurisdiction over plaintiffs' claims against the Secretary and Attorney General in the first place.

## Statement of Jurisdiction

Appellees invoked the district court's subject-matter jurisdiction under 28 U.S.C. § 1331 because their claims arise under the United States Constitution and federal law. ROA.6138, 6261-62, 6603. As described below, the district court lacked jurisdiction because plaintiffs cannot overcome the Secretary's and Attorney General's sovereign immunity and because the plaintiffs lack standing to sue them. *See infra* at 25-55.

This Court has appellate jurisdiction under 28 U.S.C. § 1291 under the collateral-order doctrine, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949), which applies to orders denying sovereign immunity. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993); *Leonard v. Martin*, 38 F.4th 481, 487 (5th Cir. 2022). And "courts in this circuit have considered standing on interlocutory appeal," including in the context of interlocutory appeals raising "sovereign immunity." *City of Austin*, 943 F.3d at 1003 & n.3.

## Issues Presented

**1.** Whether plaintiffs can overcome the sovereign immunity enjoyed by the Texas Secretary of State and Texas Attorney General by invoking the *Ex parte Young* exception and alleging that:

(a) the Secretary's general duties to prescribe forms, promulgate rules and guidelines, and report violations of law make him the enforcer of more than three dozen provisions of the Texas Election Code; and

(b) the Attorney General enforces thirty provisions of the Texas Election Code via criminal prosecution or the collection of civil penalties even though he

lacks prosecutorial authority or the ability to enforce the penalty provision under state law.

**2.** Whether the Secretary's and Attorney General's lack of enforcement authority for the challenged provisions of S.B. 1 renders plaintiffs unable to meet the traceability element of the test for Article III standing.

## STATEMENT OF THE CASE

### I.  Factual Background

### A.  The administration of elections in Texas

The Texas Secretary of State is the State's "chief election officer," charged with maintaining "uniformity in the application, operation, and interpretation" of the Texas Election Code. Tex. Elec. Code §§ 31.001(a), 31.003. The Secretary discharges this obligation primarily through the issuance of "detailed and comprehensive written directives and instructions relating to and based on" the Election Code and by distributing that guidance "to the appropriate state and local authorities having duties in the administration of these laws." *Id.* § 31.003; *see also id.* § 31.004 (informal guidance). And he is often charged by the Election Code with developing training programs for election officials, *id.* §§ 13.047, 32.115, 33.008, and prescribing official forms used by local officials throughout the State, *id.* § 31.002.

Despite the Secretary's appellation as "chief election officer," the administration of elections in Texas is carried out principally by county-level and other local officials, who are tasked with the on-the-ground implementation and enforcement of the Election Code. Sitting at apex of this county hierarchy is the Commissioners

Court, which is the governing legislative body of the county, *see generally* Tex. Local Gov't Code ch. 81. The Election Code tasks the Commissioners Court with setting up the geographic framework for county-level elections administration, instructing that body to divide the county into election precincts that generally "must contain at least 100 but not more than 5,000 registered voters." Tex. Elec. Code § 42.006(a); *see generally id.* ch. 42. Each election precinct is, in turn, "served by a single polling place located within the boundary of the precinct." *Id.* § 43.001. For general and special elections, the Commissioners Court is tasked with designating the precise location of the polling place in each precinct, *id.* § 43.002, while the county chair of a political party holding a primary election is tasked with designating the location of the polling place for the primary election, *id.* § 43.003.

Below the Commissioners Court, the Election Code divides responsibility for the administration of elections among different county or local officials for purposes of voter registration, regular voting, and early voting.

### 1. Voter registration

To be qualified to vote in an election, a prospective voter must register to vote. *Id.* § 11.002(a)(6). Voter registration is managed by the county "voter registrar." *Id.* § 12.001. The voter-registrar is, by default, the county tax assessor-collector, although the Commissioners Court may designate the county clerk as the voter registrar or create the position of County Elections Administrator to handle that task. *Id.* § 12.001; *see also id.* §§ 12.031, 31.031, 31.043. The voter registrar is charged with processing registration applications, *id.* §§ 13.071-13.073, and generally maintaining the accuracy of the voter rolls in the run-up to an election, *id.* §§ 18.001-18.013.

## 2. Regular voting

During the regular voting period, *id.* § 41.002, each election precinct is staffed by an "election judge[]," appointed by the Commissioners Court,[1] who is "in charge of and [is] responsible for the management and conduct of the election at the polling place." *Id.* §§ 32.002, 32.071. The presiding judge is specifically deputized to "preserve order and prevent breaches of the peace and violations of th[e] [Election] code in the polling place and in the area within which electioneering and loitering are prohibited" during election day. *Id.* § 32.075(a). To that end, the presiding judge "has the power of a district judge to enforce order to preserve the peace, including the power issue an arrest warrant." *Id.* § 32.075(c). The presiding judge is also empowered to appoint "election clerks to assist the judge in the conduct of an election at the polling place served by the judge." *Id.* § 32.031. The duties of these clerks are assigned by the election judge. *Id.* § 32.072.

In addition to election judges and clerks, the Election Code authorizes poll watchers—individuals who are appointed by candidates that appear on the ballot and by the chair of political parties whose candidates appear on the ballot, *id.* §§ 33.002, 33.003—to be present at the polling place in order "to observe the conduct of an election on behalf of a candidate, a political party, or the proponents or opponents of a measure." *Id.* § 33.001. Poll watchers must "be allowed to observe and report on irregularities in the conduct of any election," but they may not "interfere in the orderly conduct of an election" or cause a breach of the peace. *Id.* § 33.0015.

---

[1] Election judges in primary elections are appointed by the county chair of the political party. Tex. Elec. Code § 32.006.

### 3. Early voting

Although many registered voters will vote in person on election day at a polling place staffed by the presiding election judge and clerks, Texas law also provides for a period of early voting. *Id.* §§ 85.001, 86.007. Texas law makes "[a]ny qualified voter . . . eligible for early voting by personal appearance" at their precinct polling place. *Id.* § 82.005. Generally, "[t]he period for early voting by personal appearance begins on the 17th day before election day and continues through the fourth day before election day." *Id.* § 85.001(a). In addition, Texas also offers the option to vote by mail to certain qualified citizens: over-65 voters, the disabled, and those in jail or otherwise absent from the county on election day. *Id.* §§ 82.001-82.004.

The early voting process is managed by an "early voting clerk"—generally the county clerk, *id.* § 83.002—who "has the same duties and authority with respect to early voting as a presiding election judge has with respect to regular voting." *Id.* § 83.001(c). Thus, the early voting clerk presides over the early voting polling place and is tasked with accepting voters for in-person voting, signing the ballots, and securing the ballot box and voting machine. *See, e.g.*, *id.* §§ 85.031-85.033. The early voting clerk is also expressly tasked with "review[ing] each application for a ballot to be voted by mail." *Id.* § 86.001(a). If the early voting clerk determines that an applicant is not eligible to vote by mail, the clerk will reject the application and deliver written notice to the applicant. *Id.* § 86.001(c). Otherwise, the early voting clerk will mail a voter eligible to vote by mail "an official ballot," *id.* § 86.001(b), along with the official ballot envelope and the mail-in-ballot carrier envelope, *id.* § 86.002(a).

In order "to process early voting results from the territory served by the early voting clerk," the Election Code requires the creation of an early voting ballot board, *id.* § 87.001, which consists of a presiding judge, alternate judge, and at least one member from each political party with nominees on the general election ballot, *id.* § 87.002(a), (c). The early voting ballot board is tasked both with "count[ing] the early voting ballots that are to be counted manually," *id.* § 87.061, and with "determin[ing] whether to accept" a ballot voted by mail based upon eight statutory requirements for mail-in ballots, *id.* § 87.041(a), (b).

The early voting clerk may also appoint a signature verification committee to assist with processing mail-in ballots. *Id.* § 87.027(a). If appointed, that committee is charged with comparing the signatures on both the ballot application and the carrier envelope in order "to determine whether the signatures are those of the voter." *Id.* § 87.027(i). Once the signature verification committee makes its signature-verification determinations, the committee's chair delivers the ballots to the early voting ballot board. *Id.* The early voting ballot board is bound by the signature verification committee's determination unless the board reverses that determination by a majority vote. *Id.* § 87.027(j).

## B. The 2020 election

The 2020 election proved to be a stress test of sorts for the above-described Election Code procedures and the local officials who administer them. That election was unprecedented due to the COVID-19 pandemic, which precipitated a global health crisis. Statewide, Governor Greg Abbott extended the early voting period ahead of the November 2020 general election and allowed counties to accept hand-

delivery of mail-in ballots before Election Day. *See* Tex. Gov. Proclamation No. 41-3752, 45 Tex. Reg. 5449, 5456 (2020). And the Secretary provided detailed guidance to local officials regarding the administration of the election during the pandemic. *See Election Advisory No. 2020-14*, Tex. Sec'y of State (April 6, 2020), https://tinyurl.com/mr9kmxpk.

Despite these efforts to achieve uniformity in the administration of the 2020 election, local officials throughout the State began experimenting with altering voting rules. This localized electoral tinkering included keeping voting sites open beyond the hours authorized by the Legislature, allowing voters to remain in their cars rather than enter voting places monitored by poll watchers, creating multiple ballot drop-off locations, and sending out mass mailings of unsolicited applications to vote by mail. ROA.6624-25. None of these alternate voting rules was contemplated by state law, and many proved to be quite controversial. For example, Harris County's original plan to "educate residents about their voting options," ROA.6535, included an effort to send unsolicited vote-by-mail applications to all 4 million registered voters in the county—a procedure later held to be illegal by the Texas Supreme Court, *see State v. Hollins*, 620 S.W.3d 400, 409 (Tex. 2020) (per curiam). And Harris County's drive-through-voting plan similarly prompted a legal challenge, which was never adjudicated on the merits. *See In re Hotze*, 610 S.W.3d 909 (Tex. 2020) (orig. proceeding) (Devine, J., dissenting from denial of mandamus relief and emergency stay).

Texas was also subjected to numerous lawsuits insisting that its voting laws were suppressing the vote of minorities and populations particularly vulnerable to the

pandemic. *E.g.*, *TARA*, 28 F.4th at 670; *Lewis v. Scott*, 28 F.4th 659 (5th Cir. 2022); *Richardson v. Flores*, 28 F.4th 649 (5th Cir. 2022); *In re State*, 602 S.W.3d 549, 552 n.13 (Tex. 2020). Though the State successfully defended its laws against all challengers, it was able to do so only at the cost of significant state resources.

## C.  The 2021 passage of Senate Bill 1

To avoid a patchwork of varying applications of the State's election laws in future elections, the 87th Texas Legislature set out to clarify and strengthen existing law during its 2021 legislative session. That process, however, was beset by considerable partisan acrimony. Although legislation that would ultimately become S.B. 1 was introduced and considered by the Texas Legislature during its 140-day regular session, opponents of S.B. 1 in the Texas House of Representatives chose to walk out of the chamber on the final day of that regular session in order to deny the House a quorum and prevent the bill from passing. ROA.6536. Ultimately, Governor Greg Abbott was required to call two special sessions of the Legislature—and the Texas Supreme Court was required to issue an opinion clarifying that the Texas Constitution's compulsion-of-attendance clause authorized the House to arrest absent members who refused to report to work, *see In re Abbott*, 628 S.W.3d 288, 292 (Tex. 2021) (orig. proceeding)—before the Democratic members who had broken quorum and fled to Washington, D.C. returned to the Texas Capitol, and the House was able to resume its business, including passing S.B. 1. *See* ROA.6536, 6561-65.

### D.  Senate Bill 1

As the Texas Legislature explained, S.B. 1 was designed to ensure that "application of th[e] [Texas Election] [C]ode and the conduct of elections be uniform and consistent throughout this state to reduce the likelihood of fraud in the conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted." S.B. 1, 87th Leg., 2d C.S., art. I, § 1.04 (codified at Tex. Elec. Code § 1.0015). To this end, S.B. 1 amended several provisions of the Texas Election Code, including provisions governing voter registration, *id.* art. II, the conduct and security of elections, *id.* art. III, election officers and observers, *id.* art. IV, voting by mail, *id.* art. V, voter assistance, *id.* art. VI, and unlawful conduct, *id.* art. VII.

**1.**  Article 2 of S.B. 1 generally pertains to the registration of voters, eligibility for registration, and the maintenance of voter rolls. For example, section 2.04 requires that, within 72 hours of a voter registrar determining that a person who is not eligible to vote is nevertheless registered to vote or has voted, the registrar must deliver an affidavit to the Secretary, Attorney General, and the appropriate county or district attorney stating the "relevant facts" supporting that conclusion. S.B. 1 § 2.04 (codified at Tex. Elec. Code § 15.028). Section 2.05 directs the voter registrar to request proof of citizenship from registered voters when the registrar is informed that such a voter may be a noncitizen and directs the Secretary and Department of Public Safety to enter into an agreement to compare their data to verify voters' citizenship status. *Id.* § 2.05 (codified at Tex. Elec. Code § 16.0332(a), (a-1)).

Article 2 also contains several sections that require the Secretary to share information with other officials. Section 2.07 directs the Secretary to give the voter registrar notice if he determines that a voter on the registration list no longer lives in the county where that person is registered to vote. *Id.* § 2.07 (codified at Tex. Elec. Code § 18.068(a)). Section 2.06 directs the Secretary to notify the Attorney General if a voter registrar has repeatedly violated the voter-registration provisions of the Election Code, and it authorizes the Attorney General to seek civil penalties against such noncompliant voter registrars. *Id.* § 2.06 (codified at Tex. Elec. Code § 18.065(e), (f)). And section 2.08 requires the Secretary to refer information concerning criminal conduct in connection with an election to the Attorney General. *Id.* § 2.08 (codified at Tex. Elec. Code § 31.006(a)).

**2.**    Article 3 of S.B. 1 concerns the conduct and security of elections. Section 3.04 prohibits voting "from inside a motor vehicle," or "drive-through voting," unless the voter is unable to enter the polling place. *Id.* § 3.04 (codified at Tex. Elec. Code § 43.031(b)). Sections 3.09 and 3.10 relate to early voting and adopt new procedures such as: increasing the mandatory early voting hours to at least nine hours per day during weekdays; requiring that voters who are in line at the scheduled closing time but who have not voted be allowed to vote; extending early voting hours for weekends; and decreasing the county-population threshold for counties eligible to participate in extended early voting. *Id.* §§ 3.09, 3.10 (codified at Tex. Elec. Code §§ 85.005, 86.006(e)). Sections 3.12 and 3.13 amend the Election Code to require that polling places be located inside physical buildings and prohibit polling places from being located in "movable structure[s]." *Id.* §§ 3.12, 3.13 (codified at Tex.

Elec. Code §§ 85.061(a), 85.062(b)). And section 3.15 prohibits single-choice straight-ticket voting. *Id.* § 3.15 (codified at Tex. Elec. Code § 124.002(c)).

**3.** Article 4 of S.B. 1 relates to the conduct of election officers and poll watchers. Section 4.01 forbids a presiding election judge to remove a poll watcher for an election-law violation unless the violation was observed by an election judge or clerk. *Id.* § 4.01 (codified at Tex. Elec. Code § 32.075(g)). Section 4.06 makes it a misdemeanor for "[a]n election officer" to "intentionally or knowingly refuse[] to accept a watcher for service" when required by law. *Id.* § 4.06 (codified at Tex. Elec. Code § 33.051(g)). Section 4.07 clarifies the scope of poll watchers' permitted activities, providing (among other things) that they must be allowed free movement generally and must be allowed to sit or stand near enough to see or hear relevant voting activity. *Id.* § 4.07 (codified at Tex. Elec. Code § 33.056(a), (e)). Section 4.09 makes it a misdemeanor to unlawfully obstruct a poll watcher. *Id.* § 4.09 (codified at Tex. Elec. Code § 33.061(a)). And section 4.12 requires that early voting ballots be delivered in person and received by an election official who records the voter's name, signature, and type of identification evidence on a form prescribed by the Secretary. *Id.* § 4.12 (codified at Tex. Elec. Code § 86.006(a-2)).

**4.** Article 5 amends the procedures relating to voting by mail. Two of the substantive provisions of Article 5—sections 5.01 and 5.02—impose new requirements or clarify existing provisions on mail-in-ballot-application forms, including a wet-signature requirement and a requirement to list the applicant's driver's license number or other form of identification. *Id.* §§ 5.01, 5.02 (codified at Tex. Elec. Code §§ 84.001(b)), 84.002(1-a)). Sections 5.03, 5.08, and 5.10 ensure that this

information is recorded by requiring that the vote-by-mail application, mail-in-ballot carrier envelope, and online tracking application for mail-in ballots include a space for entering this new information. *Id.* §§ 5.03, 5.08, 5.10 (codified at Tex. Elec. Code §§ 84.011(a)(3-a), 86.002(g), 86.015(c)(4)).

Sections 5.06, 5.07, 5.12, 5.13, and 5.14 instruct local officials how to handle vote-by-mail applications and ballots that do not contain the information required by sections 5.01 and 5.02. Section 5.07 directs the early voting clerk to reject vote-by-mail applications that do not include the required information and to notify the applicant of any rejection, giving that applicant an opportunity to cure any defects. *Id.* § 5.07 (codified at Tex. Elec. Code § 86.001(f)). Section 5.06 authorizes the election judge to permit a voter to cast a provisional ballot when that voter has cancelled his or her vote-by-mail application. *Id.* § 5.06 (codified at Tex. Elec. Code § 84.035(b)). Sections 5.12, 5.13, and 5.14 create two new sections of the Election Code that provide further detail regarding how mail-in voters may correct defects in submitted ballots. *Id.* §§ 5.12, 5.13, 5.14 (codified at Tex. Elec. Code §§ 87.021, 87.041(b)(8), 87.0411). Specifically, if a ballot contains one of several listed defects and the voter can correct the defect and return the ballot by mail before election day, the signature verification committee[2] or early voting ballot board must provide the voter the opportunity to do so. *Id.* But if not, the signature verification committee or early voting ballot board

---

[2] Section 5.11 of S.B. 1 amends provisions of the Election Code regarding the make-up of the signature verification committee, including adding provisions regarding the appointment of the vice-chair of the committee. S.B. 1 § 5.11 (codified at Tex. Elec. Code § 87.027(d)).

may inform the voter by phone or e-mail of the defect and how it might be cured by in-person voting. *Id.*

Lastly, section 5.04 prohibits "an officer or employee of this state or of a political subdivision" from distributing a vote-by-mail application "to a person who did not request an application." *Id.* § 5.04 (codified at Tex. Elec. Code § 84.0111).

**5.**    Article 6 of S.B. 1 concerns voter assistance, eligibility requirements for giving or receiving assistance, and related procedures.[3] Section 6.01 requires a person who simultaneously transports seven or more curbside voters to the polling place to fill out a form, provided by an election officer, that identifies the person's name and address and specifies whether that person is also assisting voters in filling out the ballot. *Id.* § 6.01 (codified at Tex. Elec. Code § 64.009(f)).

Sections 6.03, 6.04, and 6.05 establish procedures for voter assistors. For example, section 6.04 requires a person (other than an election officer) who assists a voter to take an oath, administered by the local election officer, swearing that the voter is eligible to receive assistance and that the assistor will assist the voter within the confines of the law. *Id.* § 6.04 (codified at Tex. Elec. Code § 64.034). Section 6.03 requires a voter assistor to complete a form listing the assistor's name and address, the voter's name and address, the assistor's relationship to the voter, and specifying whether the assistor received any compensation or benefit from a candidate,

---

[3] Under Texas law, voters who have "a physical disability that renders the voter unable to write or see" or who possess "an inability to read the language in which the ballot is written" are entitled to assistance during the process of voting. Tex. Elec. Code § 64.031.

campaign, or political committee. *Id.* § 6.03 (codified at Tex. Elec. Code § 64.0322). Section 6.05 requires a voter assistor to repeat this information on the voter's mail-in-ballot carrier envelope; section 6.07 requires that mail-in-ballot carrier envelope to include a space for indicating the relationship of a voter assistor to the voter. *Id.* §§ 6.05, 6.07 (codified at Tex. Elec. Code §§ 86.010(e), 86.013(b)).

Finally, section 6.06 makes it a felony to compensate someone, offer to compensate someone, or solicit, receive, or accept compensation for assisting voters. *Id.* § 6.06 (codified at Tex. Elec. Code § 86.0105).

**6.**    Articles 7 and 8 of S.B. 1 define new election-law crimes and describe the enforcement of S.B. 1, respectively. Section 7.02, for example, clarifies that it is a misdemeanor for an employer to prohibit an employee from voting during both election day *and* during the early voting period. *Id.* § 7.02 (codified at Tex. Elec. Code § 276.004). Section 7.04 makes it a crime to engage in vote harvesting, unlawful solicitation and distribution of a vote-by-mail application or an early voting ballot and balloting materials, perjury in connection with election procedures, and unlawful altering of election procedures. *Id.* § 7.04 (codified at Tex. Elec. Code §§ 276.015, 276.016, 276.017, 276.018, 276.019). Finally, section 8.01 defines who may be an election official, establishes the circumstances under which an election official might be subject to civil penalties, and creates a cause of action against an election officer. *Id.* § 8.01 (codified at Tex. Elec. Code §§ 31.128, 31.129, 31.130).

## II. Procedural History

### A. Plaintiffs' operative complaints

Lawsuits seeking to enjoin the enforcement of S.B. 1 were filed even before the bill was enacted into law: to wit, one group of plaintiffs filed their lawsuit four days *before* S.B. 1 was even signed by the Governor. ROA.112-83. And upon S.B. 1's passage, it was besieged by a slew of additional lawsuits from the law's opponents, whose efforts had now moved from a legislative to a judicial forum. Those lawsuits were collectively brought by nearly three dozen individuals and groups as well as the United States. The operative complaints of three groups of plaintiffs are relevant to this consolidated appeal.

*First*, the LUPE Plaintiffs[4] (No. 22-50775) sued Texas Secretary of State John Scott, Texas Attorney General Ken Paxton, and the State of Texas, seeking to enjoin the enforcement of twenty-three provisions of S.B. 1. ROA.6664-85. They brought this challenge through eight separate claims: five constitutional claims brought pursuant to 42 U.S.C. § 1983—including three under the Fourteenth Amendment (intentional discrimination, *Anderson-Burdick*, void-for-vagueness) and one each under the First and Fifteenth Amendments—and three statutory claims under sections 2 and 208 of the Voting Rights Act ("VRA") and Title II of the Americans with

---

[4] These plaintiffs include ten organizational plaintiffs and one individual plaintiff: La Union del Pueblo Entero; Friendship-West Baptist Church; Anti-Defamation League Austin, Southwest & Texoma Regions; Southwest Voter Registration Education Project; Texas Impact; Mexican-American Bar Association of Texas; Texas Hispanics Organized for Political Education; Jolt Action; William C. Velazquez Institute; Fiel Houston, Inc., and James Lewin. ROA.6604-09.

Disabilities Act ("ADA"). ROA.6664-85. While plaintiffs brought each one of these claims against the Secretary and Attorney General, they asserted only the VRA claims against the State itself. ROA.6664-85.

*Second*, the MFV Plaintiffs[5] (No. 20-50777) sued Secretary Scott, Attorney General Paxton, and Governor Abbott seeking to enjoin the enforcement of thirty-two provisions of S.B. 1, ROA.6217-53—nineteen of which overlap with the twenty-three provisions challenged by the LUPE Plaintiffs. *Compare* ROA.6664-85, *with* ROA.6217-53. Moreover, the MFV Plaintiffs challenged those thirty-two provisions through seven of the same constitutional and statutory theories as the LUPE Plaintiffs: four constitutional claims brought pursuant to 42 U.S.C. § 1983—including three claims under the Fourteenth Amendment (intentional discrimination, *Anderson-Burdick*, void-for-vagueness) and one under the Fifteenth Amendment—and three statutory claims under sections 2 and 208 of the VRA and Title II of the ADA.[6] *Compare* ROA.6664-85, *with* ROA.6217-53. While the MFV Plaintiffs brought each one of these claims against the Secretary and Attorney General, they asserted only the VRA claims against the Governor. ROA.6217-53.

---

[5] These plaintiffs include five organizational plaintiffs and four individuals: Houston Justice; Houston Area Urban League; Delta Sigma Theta Sorority, Inc.; The Arc of Texas; Mi Familia Vota; Marla Lopez; Marlon Lopez; Paul Rutledge; and Jeffrey Lamar Clemmons. ROA.6139-55.

[6] The MFV plaintiffs brought an eighth claim under section 504 of the Rehabilitation Act, which the LUPE Plaintiffs do not.

*Third*, the OCA Plaintiffs[7] (No. 22-50778) sued Secretary Scott and Attorney General Paxton seeking to enjoin the enforcement of nine provisions of S.B. 1. ROA.6303-33. Four of those challenged provisions were also challenged by the LUPE Plaintiffs, and all nine were challenged by the MFV Plaintiffs. *Compare* ROA.6303-33, *with* ROA.6664-85 *and* ROA.6217-53. Moreover, the OCA Plaintiffs challenged those nine provisions of S.B. 1 via seven different constitutional and statutory theories. Four of those theories were also advanced by the LUPE Plaintiffs (void-for-vagueness under the Fourteenth Amendment, violation of the First Amendment's Free Speech Clause, section 208 of the VRA, and Title II of the ADA), and four were advanced by the MFV Plaintiffs (void for vagueness under the Fourteenth Amendment, section 208 of the VRA, Title II of the ADA, and section 504 of the Rehabilitation Act). *Compare* ROA.6303-33 *with* ROA.6664-85 *and* ROA.6217-53. A seventh claim, brought pursuant to 42 U.S.C. § 1983 under section 101 of the Civil Rights Act of 1964, was brought by the OCA Plaintiffs only.

## B.  The State Defendants' motions to dismiss

The State Defendants filed motions to dismiss the operative complaints filed by each of the three groups of plaintiffs. As relevant to this interlocutory appeal, the State Defendants argued that the district court lacked jurisdiction both because of the State Defendants' sovereign immunity and because the plaintiffs lacked standing to sue the State Defendants.

---

[7] These plaintiffs include five organizational plaintiffs: OCA-Greater Houston; League of Women Voters of Texas; REVUP Texas; Texas Organizing Project; and Workers Defense Action Fund. ROA.6263-73.

*First*, the State Defendants argued in each case that the plaintiffs could not overcome the State Defendants' sovereign immunity for their claims brought via 42 U.S.C. § 1983[8] through the *Ex parte Young* exception, because the state officials lacked a sufficient "enforcement connection" to the challenged provisions of S.B. 1. ROA.7204-20, 7239-46, 7646-55. As to the Secretary, the State Defendants argued that the challenged provisions of S.B. 1 concerned either voting rules enforced by local officials or provisions that did not empower the Secretary to compel or constrain the plaintiffs. ROA.7206-16, 7241-44, 7647-52. With respect to the Attorney General, the State Defendants argued that the plaintiffs had not pleaded the existence of a demonstrated willingness (or ability) to enforce the challenged provisions. ROA.7216-19, 7244-46, 7652-54.

The State Defendants also argued that Congress did not abrogate sovereign immunity by passing sections 2 and 208 the VRA, though they acknowledged that this Court has held to the contrary in *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017). ROA.7219, 7247, 7654-55.

*Second*, the State Defendants also argued that the plaintiffs lacked standing because the injuries plaintiffs alleged were not fairly traceable to the State Defendants or redressable by an order of the court. ROA.7223-24, 7247-48, 7655-58. Pointing

---

[8] Plaintiffs brought their constitutional claims and their claim under Section 101 of the Civil Rights Act through the cause of action provided by 42 U.S.C. § 1983. ROA.6217-30, 6240-43, 6303-04, 6328-33. Because section 1983 does not abrogate the States' sovereign immunity, *see Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013), plaintiffs had to rely on the *Ex parte Young* exception to support their effort to overcome the State Defendants' sovereign immunity.

out that this Court's precedent recognizes some degree of overlap between the standing and sovereign-immunity analyses, the State Defendants argued that, because they do not enforce any of the challenged provisions of S.B. 1, plaintiffs could not establish traceability for any of their claims. ROA.7223-24, 7247-48, 7655-58.

## C.  The district court's orders

The district court denied all three motions in relevant part, including rejecting the State Defendants' sovereign-immunity and standing arguments.

*First*, the district court rejected the State Defendants' *Ex parte Young* arguments. The court concluded that the Secretary enforces a host of provisions of S.B. 1 that dictate the content of forms—such as vote-by-mail forms, voter-assistance forms, and mail-in-ballot carrier envelopes—merely because the Election Code empowers him to "prescribe the design and content" of such forms and "furnish" them to local election officials, Tex. Elec. Code § 31.002(a), (b). ROA.10600-07, 10671-76, 10735-41. It also held that the Secretary enforces an array of provisions of S.B. 1 that amend the rules governing motor voting, early voting, poll watching, and straight-ticket voting because the Election Code empowers the Secretary to adopt rules or develop programs to assist with the implementation of such rules by local officials, Tex. Elec. Code §§ 31.012(d), 33.008, 66.004. ROA.10607-10, 10677, 10741-43. And the court held that the Secretary enforces various provisions of S.B. 1 that define new civil and criminal offenses because the Election Code requires him to report violations of the law to the Attorney General or local prosecutors, Tex. Elec. Code § 31.006. ROA.10598-10600, 10610-18, 10677, 10743-47.

The court also concluded that the Attorney General had a sufficient enforcement connection to various provisions of S.B. 1 because he has investigatory powers, because he may seek civil penalties against election officials who violate provisions of the Election Code, and because a local district attorney could theoretically deputize him to criminally prosecute Election Code violations. ROA.10620-21, 10681-83, 10752-54. The court also concluded that the Attorney General's public opposition to voter fraud, including past criminal prosecutions, evinced the requisite demonstrated willingness to enforce the challenged provisions of S.B. 1. ROA.10622-28, 10683-90, 10754-61.

*Second*, the district court also concluded that the plaintiffs had standing to sue the Secretary and the Attorney General (but not the Governor).[9] ROA.10654-56, 10660, 10714-17, 10784-87. Seizing on the State Defendants' acknowledgement that the standing analysis "overlap[s]" with the sovereign-immunity analysis, the court concluded that the plaintiffs had properly alleged standing "for the same reasons discussed in the Court's *Ex parte Young* analysis." ROA.10654, 10715, 10785.

The State Defendants timely noticed these interlocutory appeals. ROA.10857-62. Given the overlapping issues, claims, and defendants, the State Defendants filed an unopposed motion to consolidate these appeals, which Judge Wilson granted.

---

[9] The district court concluded that the MFV Plaintiffs had not shown how their purported injuries under the VRA were fairly traceable to the Governor, so the Court dismissed the claims against the Governor for lack of standing. ROA.10656.

## Summary of the Argument

The district court erred by denying the State Defendants' motions to dismiss for two independent jurisdictional reasons:

*First*, plaintiffs' section 1983 claims against the Secretary and Attorney General are barred by sovereign immunity. To overcome sovereign immunity, the district court held that plaintiffs satisfied the *Ex parte Young* exception because the Secretary and Attorney General enforce more than three dozen provisions of S.B. 1. That was error.

The Secretary does not enforce the challenged provisions—local county-level officials do. Plaintiffs train their attention on areas of elections administration as diverse as voter registration, the conduct and security of elections, the conduct of election officers, vote-by-mail procedures, voter assistance, and election-law offenses. But it is local officials—such as voter registrars, commissioners courts, election judges, early voting clerks, early voting ballot boards, and district or county attorneys—who the Election Code charges with on-the-ground enforcement of these provisions of Texas election law. Nor was it proper for the district court to invoke the Secretary's general duties to prescribe forms, promulgate rules, and report violations of law. Even if reliance on such general duties was proper under this Court's precedent (it is not), enjoining the Secretary from taking these actions would not remedy plaintiffs' injuries, which are tied to the actions of local officials who are independently charged with enforcing the substantive provisions of the Election Code irrespective of whether the Secretary prescribes a form, promulgates a rule, or reports a violation of law.

The district court also erred by holding that the Attorney General enforces the challenged provisions of S.B. 1 via criminal prosecution and the collection of civil penalties. The Texas Court of Criminal Appeals recently held unconstitutional the provision of the Election Code authorizing the Attorney General to unilaterally prosecute election-law crimes, so the Attorney General lacks authority under state law to unilaterally institute a criminal prosecution for a violation of S.B. 1. Further, S.B. 1's civil-penalty provision does not expressly task the Attorney General with the authority to institute actions in the trial court to collect civil penalties, and under state law this statutory silence prevents him from enforcing that provision.

*Second*, plaintiffs lack standing to sue the Secretary and Attorney General for similar reasons. Because the Secretary and Attorney General do not enforce the challenged provisions of S.B. 1, plaintiffs cannot establish the traceability element of the test for Article III standing.

## Standard of Review

This Court "review[s] sovereign immunity and standing *de novo*." *TARA*, 28 F.4th at 671. In reviewing a motion to dismiss, the court analyzes the pleadings as well as documents that are attached or necessarily incorporated. *See Tellabs, Inc. v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 322 (2007); *Jackson v. City of Hearne*, 959 F.3d 194, 204-05 (5th Cir. 2020).

# ARGUMENT

## I.  Plaintiffs' Section 1983 and VRA Claims Against the Secretary and Attorney General Are Barred by Sovereign Immunity.

Familiar principles of sovereign immunity bar plaintiffs' claims against the State Defendants. "The doctrine of state sovereign immunity recognizes the 'residua[l] and inviolable sovereignty' retained by the states in the Constitution's wake." *Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022) (quoting *Alden v. Maine*, 527 U.S. 706, 715 (1999)). "This principle, partially embodied in the Eleventh Amendment, is commonly distilled to the proposition that individuals may not sue a state—either in its own courts, courts of other states, or federal courts—without the state's consent." *Id.* Thus, "unless the state has waived sovereign immunity or Congress has expressly abrogated it," the state sovereign immunity doctrine will bar the suit. *City of Austin*, 943 F.3d at 997. "The Supreme Court, however, carved out an exception to state sovereign immunity in *Ex parte Young* . . . permitting suits against state actors whose conduct violates federal law." *Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (per curiam). "'The rule is based on the legal fiction that a sovereign state cannot act unconstitutionally,' and therefore, when 'a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit.'" *Id.* (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)).

The district court relied on both the *Ex parte Young* and congressional-abrogation exception to conclude that plaintiffs could overcome the State Defendants' sovereign immunity. But neither exception is applicable here. The Secretary and the Attorney General lack a sufficient "enforcement connection" to the challenged

provisions of S.B. 1 that would be required to meet the *Ex parte Young* exception. And Congress did not abrogate state sovereign immunity when it passed sections 2 or 208 of the VRA.

## A. Plaintiffs' section 1983 claims against the Secretary of State and Attorney General do not satisfy the *Ex parte Young* exception.

Relying on the *Ex parte Young* exception, plaintiffs assert six constitutional claims and one statutory claim against the Secretary of State and Attorney General via the cause of action provided by section 1983. ROA.6217-30, 6240-43, 6303-04, 6329-33, 6664-71, 6678-85. But because neither state official is a proper defendant under *Ex parte Young* in these circumstances, the district court erred in applying this exception to jettison their sovereign immunity.

For a state official to be a proper defendant in a suit seeking injunctive relief under *Ex parte Young*, that official "must have '*some* connection with the enforcement of the [challenged] act.'" *TARA*, 28 F.4th at 672 (quoting *Ex parte Young*, 209 U.S. at 157) (emphasis and alterations original). Although "[h]ow much of a 'connection' has been hard to pin down," this Court has identified three "guideposts." *Id.* "First, an official must have more than 'the general duty to see that the laws of the state are implemented.'" *Id.* (quoting *City of Austin*, 943 F.3d at 999-1000). "Second, the official must have 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) ("*TDP I*")). "This means the analysis is 'provision-by-provision': The officer must enforce 'the particular statutory provision that is the subject of the litigation.'" *Id.* "Third 'enforcement' means

'compulsion or constraint.'" *Id.* (quoting *City of Austin*, 943 F.3d at 1000). Consequently, "[i]f the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation.'" *Id.* (citing *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)).

Plaintiffs' claims founder on these bedrock principles. The Secretary is not a proper *Ex parte Young* defendant because he does not enforce any of the challenged provisions of S.B. 1. And plaintiffs have not identified any demonstrated willingness of, or ability for, the Attorney General to enforce the challenged provisions. The district court's holding to the contrary flouts basic principles of this Court's sovereign-immunity jurisprudence.

### 1.    The Secretary of State does not enforce the challenged provisions.

Plaintiffs' section 1983 claims collectively allege that the Secretary enforces thirty-eight[10] provisions of S.B. 1, including provisions touching on voter registration and maintenance of voter rolls (Article 2), the conduct and security of

---

[10] Those provisions include sections 2.04, 2.05, 2.06, 2.07, 2.08, 2.11, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.06, 4.07, 4.09, 4.12, 5.01, 5.02, 5.03, 5.04, 5.06, 5.07, 5.08, 5.10, 5.11, 5.12, 5.13, 5.14, 6.01, 6.03, 6.04, 6.05, 6.06, 6.07, 7.02, 7.04, and 8.01. ROA.10598, 10671, 10681, 10733. Because the district court held that the Secretary of State does not "compel[] or constrain[] under section 2.11," ROA.10750, and plaintiffs do not challenge that conclusion via a cross-appeal, the State Defendants do not address that provision. Although the district court held that any challenge to section 6.04 was moot, ROA.10661, 10723, 10792, and that plaintiffs failed to state a claim challenging section 7.04, ROA.10723, 10792, the district court nevertheless erroneously held that the Secretary enforces these provisions, ROA.10614, 10746. For completeness, the State Defendants address these two provisions below.

elections (Article 3), the conduct of election officers and poll watchers (Article 4), vote-by-mail procedures (Article 5), voter assistance (Article 6), and election-law offenses and enforcement (Articles 7 and 8). But in the context of the *Ex parte Young* analysis, this Court has been particularly attentive to the fact that "the Texas Election Code delineates between the authority of the Secretary of State and local officials." *TARA*, 28 F.4th at 672 (quoting *TDP I*, 978 F.3d at 179). And although plaintiffs take aim at a dizzying array of S.B.1's provisions, the required "provision-by-provision analysis" demonstrates a common flaw: each challenged provision is enforced by local election officials, not the Secretary.

**a.**  Consider first plaintiffs' challenge to sections 2.04, 2.05, 2.06, 2.07, and 2.08 of S.B. 1, which generally concern voter registration and the maintenance of voter rolls. None of these provisions is enforced by the Secretary, who lacks the "particular duty to enforce" these statutes through "compulsion or constraint." *Id*. Section 2.04, for example, instructs the *voter registrar* to "execute and deliver" to the Secretary, Attorney General, and local prosecutors information indicating that an individual who is not eligible to vote is nevertheless registered to vote or voted. S.B. 1 § 2.04. To the extent that plaintiffs' argument is that the Secretary's receipt of information under section 2.04 constitutes "enforcement," it is hard to see how the Secretary's passive receipt of information could in any sense constitute "compulsion or constraint," since nothing in section 2.04 authorizes the Secretary to take any action requiring "anyone to obey" that section. *TARA*, 28 F.4th at 672.

The same is true of sections 2.05, 2.06, 2.07, and 2.08, all of which concern the Secretary's sharing of, rather than receipt of, information. Section 2.05 directs the

Secretary to "enter into an agreement with the Department of Public Safety," pursuant to which the two agencies compare citizenship-status information derived from the Texas Department of Public Safety's database and the Secretary's voter-registration database. S.B. 1 § 2.05. Section 2.07 requires the Secretary to notify the voter registrar if he determines that a voter on a registration list no longer lives in the county in which he is registered. *Id.* § 2.07. And sections 2.06 and 2.08 require the Secretary to refer information to the Attorney General about any criminal conduct that occurs in connection with an election and with regard to any voter registrar's noncompliance with the Election Code's provisions regarding voter registration. *Id.* §§ 2.06, 2.08.[11] The Secretary's mere provision of information to voter registrars, DPS, and the Attorney General does not "compel or constrain anyone" to do anything, much less the plaintiffs here. *TARA*, 28 F.4th at 672.

**b.** Plaintiffs fare no better in identifying an "enforcement" connection between the Secretary and Article 3's provisions concerning the conduct and security of elections. Those sections of S.B. 1 enact procedures that are implemented at precinct-level polling places throughout the State, including: prohibiting voting "from inside a motor vehicle," S.B. 1 § 3.04, extending early voting hours on the weekends, *id.* § 3.09, increasing the number of counties eligible to participate in extended early

---

[11] Section 2.06 also authorizes the Secretary to sanction a voter registrar who does not comply with certain voter-registration provisions of the Election Code by requiring that voter registrar to attend a training course. S.B. 1 § 2.06. To the extent that plaintiffs challenge that portion of section 2.06, they lack standing to do so because none of the plaintiffs or their members is alleged to be a voter registrar. *See infra* at 52.

voting, *id.* § 3.10, requiring early voting polling places to be located "inside" physical buildings and not in "movable structure[s]," *id.* §§ 3.12, 3.13, and forbidding single-choice straight-ticket voting, *id.* § 3.15(c).

None of these provisions envisions any enforcement role for the Secretary. Because the Election Code assigns local officials—such as a Commissioners Court or other "governing body of [the] political subdivision"—responsibility for establishing the location of polling places, Tex. Elec. Code §§ 43.002-43.004, the Secretary does not enforce section 3.04's motor-voting prohibition. And because the Election Code charges the "early voting clerk," not the Secretary, with responsibility for conducting early voting, the Secretary does not enforce sections 3.09, 3.10, 3.12, and 3.13—all of which concern early voting procedures. *See Tex. Democratic Party v. Hughs*, 997 F.3d 288, 291 & n.16 (5th Cir. 2021) (*"TDP II"*) (citing Tex. Elec. Code §§ 83.001, 83.002, 83.005); *Mi Familia Vota v. Abbott*, 977 F.3d 461, 468 (5th Cir. 2020). Finally, "the authority charged with preparing the ballot" lies with "a county clerk, county party chair, city secretary, or other local official, depending on the type of election," not the Secretary, *TARA*, 28 F.4th at 673, so section 3.15's prohibition on "[v]oting system ballots" that are arranged to permit "a political party's candidate to be selected in one motion or gesture," S.B. 1 § 3.15, is likewise not enforced by the Secretary.

**c.**   The Secretary has even less of a connection to the challenged provisions of Article 4: these provisions uniformly address local officials like early voting clerks and presiding election judges. For example, section 4.01 forbids "[a] presiding judge" to remove a poll watcher from a polling place for violating the law "unless

the violation was observed by an election judge or clerk." S.B. 1 § 4.01. Section 4.06 makes it a misdemeanor for "[a]n election officer" to "intentionally or knowingly refuse[] to accept a watcher for service" when required by law. *Id.* § 4.06. Section 4.07 provides that "a [poll] watcher may not be denied free movement where election activity is occurring," and section 4.09 makes it a misdemeanor to obstruct the view of a poll watcher. *Id.* §§ 4.07, 4.09. Finally, section 4.12 provides that an early voting ballot delivered in person must be "received by an election official" who must record the voter's name, signature, and type of identification used. *Id.* § 4.12.

None of these provisions is even remotely "enforced" by the Secretary. Sections 4.01, 4.06, 4.07, and 4.09 govern the conduct of election officers, such as election judges and early voting clerks, and violations of these provisions would be enforced by a district or county attorney with prosecuting authority in the relevant jurisdiction. *See Lewis*, 28 F.4th at 664 ("it is local prosecutors, not the Secretary, who are specifically charged with enforcement of the criminal prohibition[s]" in the Election Code). But nothing in the Election Code deputizes the Secretary to "compel or constrain" the plaintiffs "to obey" these provisions, *TARA*, 28 F.4th at 672, because he lacks prosecutorial authority, *see Lewis*, 28 F.4th at 664. And because the early voting clerk is charged with authority to oversee early voting, *TDP II*, 997 F.3d at 291, the Secretary does not enforce section 4.12 either.

**d.**   Nor does the Secretary enforce the vote-by-mail provisions contained in Article 5 of S.B. 1—these provisions are enforced by local officials such as the early voting clerk, presiding election judge, early voting ballot board, and signature verification committee. Sections 5.01 and 5.02 require mail-in-ballot applications to

include a wet signature and list the applicant's driver's license number or other form of identification, and sections 5.03 and 5.08 ensure that the vote-by-mail application form and the accompanying mail-in-ballot carrier envelope that are designed by the Secretary include spaces for this information. S.B. 1 §§ 5.01, 5.02, 5.03, 5.08.

But the Secretary does not "enforce" these requirements through constraint, compulsion, or otherwise. *TARA*, 28 F.4th at 672. Instead, the Election Code expressly tasks the "early voting clerk" with this responsibility: "[t]he early voting clerk shall review each application for a ballot to be voted by mail." Tex. Elec. Code § 86.001(a); *see Lewis*, 28 F.4th at 663-64 (the "early voting clerk" and other "local election officials" enforce mail-in ballot and early voting procedures). And section 5.07 of S.B. 1 amends the Election Code to specifically require the early voting "clerk" to "reject" applications that do not comply with the provisions of sections 5.01 and 5.02. S.B. 1 § 5.07. Other provisions of Article 5 are enforced by different local election officials, such as the "election judge" who may permit a person whose vote-by-mail ballot was cancelled to cast a provisional ballot, *id.* § 5.06, and local signature verification committees and early voting ballot boards who review vote-by-mail ballots for defects and provide voters the opportunity to cure such defects, *id.* §§ 5.11, 5.12, 5.13, 5.14. *See Lewis*, 28 F.4th at 664 ("It is local election officials, not the Secretary, who verify voters' signatures and notify voters of a mismatch."). But conspicuously, no enforcement role is provided for the Secretary.

To be sure, one provision challenged by plaintiffs—section 5.10—requires an online tool created by the Secretary that tracks mail-in ballots and ballot applications to allow a voter to add or correct information required by sections 5.02 and 5.08. *Id.*

§ 5.10. But nothing about section 5.10 imbues the Secretary with power to "compel or constrain anyone to obey," *TARA*, 28 F.4th at 672; indeed, section 5.10 merely requires the Secretary to provide an *option* for voters to "add or correct information required" by sections 5.02 and 5.08 in the online tool. S.B. 1 § 5.10.

   **e.**   The Secretary does not enforce Article 6's voter-assistance provisions either. Section 6.01 requires that an individual who transports seven or more curbside voters (who are not family members) to a polling place must complete a form listing that individual's name and address and declare whether that individual will also serve as a voter assistant. S.B. 1 § 6.01. Notably, that form is "provided" to that individual by a local "election officer"—not the Secretary. *Id.* And although the form must be later "delivered to the secretary of state" and made available to the Attorney General upon his request, *id.*, nothing about this sharing of information means that the Secretary "compel[s] or constrain[s] anyone to obey," *TARA*, 28 F.4th at 672, these voter-assistance provisions. *Supra* at 28-29.

   Similarly, section 6.03 requires a voter assistor to fill out a form listing his or her name and address, the voter's name and address, the assistor's relationship to the voter, and specifying whether the assistor received any compensation or benefit from a candidate, campaign, or political committee. S.B. 1 § 6.03. And section 6.05 requires a voter assistor to include that same information on the mail-in-ballot carrier envelope if he or she assists a voter who votes by mail. *Id.* § 6.05. But under both provisions it is a local official who is tasked with enforcement authority. Namely, under section 6.03 it is an "election officer"—the presiding election judge during the regular-voting period or the early voting clerk during the early voting period,

*supra* at 6-8—who receives the voter-assistor's form "at the time the voter casts a ballot," *id.* § 6.03, and under section 6.05 it is the early voting ballot board, which is tasked with "process[ing] early voting results," Tex. Elec. Code § 87.001.

Nor does the Secretary enforce sections 6.04 or 6.06. Section 6.04 requires a voter assistor to take an oath swearing that the voter is eligible to receive assistance and that the assistor will provide help within the confines of the law. S.B. 1 § 6.04. But that oath is "administered by an election officer at the polling place," not the Secretary. *Id.* Likewise, section 6.06 makes it a felony to compensate someone, offer to compensate someone, or solicit, receive, or accept compensation for assisting voters. S.B. 1 § 6.06. But the Secretary does not have prosecutorial authority, so "it is local prosecutors, not the Secretary, who are specifically charged with enforcement of th[is] criminal prohibition." *Lewis*, 28 F.4th at 664.

**f.**    Finally, the Secretary does not enforce sections 7.02, 7.04, and 8.01—all three of which define new election-law offenses. Sections 7.02 and 7.04 set forth several new election-law misdemeanors and felonies, including prohibitions on preventing an employee from voting during the early voting period, vote harvesting, unlawful solicitation and distribution of a vote-by-mail application or an early voting ballot and balloting materials, perjury in connection with election procedures, and unlawful altering of election procedures. S.B. 1 § 7.02, 7.04. These crimes are plainly not enforceable by the Secretary, who lacks prosecutorial authority. *See Lewis*, 28 F.4th at 664. And even though section 8.01 creates a cause of action against an election official, making him liable to the State for civil penalties in certain circumstances, S.B. 1 § 8.01, nothing in that provision vests the Secretary with the "'the particular duty

to enforce'" this civil-penalty provision, *TARA*, 28 F.4th at 672 (quoting *TDP I*, 978 F.3d at 179).

### 2. The district court's reliance on the Secretary's general duties was legal error.

The district court rejected the State Defendants' comprehensive analysis of the challenged provisions of S.B. 1 and the demonstrable lack of enforcement authority those provisions vest in the Secretary. Instead, the district court fashioned three cross-cutting theories of enforcement pursuant to which it tagged the Secretary with enforcement authority for thirty-seven separate provisions of S.B. 1. But the district court's reliance on Secretary's "general duties"—such as his duties to prescribe forms, promulgate rules, and report violations of law—is impermissible under this Court's precedent. *See id.* Regardless, these three proffered theories of enforcement lack foundation in law or logic.

### a. Prescribing forms

The district court first held that the Secretary enforces twelve provisions[12] of S.B. 1 because the Election Code tasks him with "responsib[ility] for prescribing the design and content of" various forms, such as vote-by-mail applications, mail-in-ballot carrier envelopes, and voter-assistance forms. *See* ROA.10602-07, 10671-76, 10735-41. The court reasoned that the substantive provisions of S.B. 1 that plaintiffs challenge "can be enforced only if and when the Secretary modifies" the vote-by-mail and voter-assistance forms "to integrate the new . . . requirements delineated in

---

[12] Sections 4.12, 5.01, 5.02, 5.03, 5.07, 5.08, 5.12, 5.13, 5.14, 6.01, 6.03, and 6.07.

S.B. 1." ROA.10605, 10675-76, 10739. So the court concluded that an injunction forbidding the Secretary to create these forms in the first place "necessarily compels or constrains local officials by preventing them from rejecting the[m]," thus supplying the requisite connection for *Ex parte Young* purposes. ROA.10605-06, 10676, 10740.

This analysis is built entirely on a false premise. An injunction prohibiting the Secretary from designing and creating vote-by-mail applications, mail-in-ballot carrier envelopes, or voter-assistance forms would not prevent local officials from enforcing the substantive requirements of the vote-by-mail or voter-assistance provisions of S.B. 1. To be sure, such an injunction would indirectly prevent local officials from *using a form* prescribed by the Secretary; but nothing about such an injunction would relieve local officials—who would not be bound by such an injunction—of their independent obligation to enforce the substantive provisions of state law. Voters are not even required to use the vote-by-mail application or mail-in-ballot carrier envelope forms prescribed by the Secretary in order to have their application accepted or ballot counted. Tex. Elec. Code §§ 84.001(c), 86.005(d). And plaintiffs' complaints are not about the forms themselves but the fact that local officials use them. "So enjoining the Secretary" from creating these forms "would not afford the Plaintiffs the relief that they seek, and therefore, the Secretary of State is not a proper defendant." *Richardson*, 28 F.4th at 654.

Consider sections 6.01 and 6.03 of S.B. 1. These provisions respectively require individuals who transport seven or more curbside voters to a polling place and individuals who provide voter assistance to provide certain information on forms. Although it is the Secretary that "prescribe[s] the form[s]," those forms are "provided

by" and "submitted to" "an election officer" at the polling place—not the Secretary. S.B. 1 §§ 6.01, 6.03. The hypothetical injunction proposed by the district court would certainly restrain the Secretary from prescribing the voter-assistance forms described in sections 6.01 and 6.03; but it would do nothing to relieve local "election officer[s]"—who are not the subjects of such an injunction—of their independent legal obligation to "provide[]" "a form" to individuals transporting seven or more persons and receive "submi[ssion]" of "a form" by the voter assistant. *Id.* §§ 6.01, 6.03; *see TARA*, 28 F.4th at 673 & n.6; *Richardson*, 28 F.4th at 654. Perhaps the form provided would be one of their own creation, but local "election officer[s]" would still be independently obligated by sections 6.01 and 6.03 to collect this information from voter assistors.

The same flaw is evident in the district court's conclusion that the Secretary enforces the vote-by-mail provisions of S.B. 1 by designing the forms for vote-by-mail applications and mail-in-ballot carrier envelopes. ROA.10600-06, 10671-76, 10735-40. The district court suggested that it could remedy the alleged constitutional violations associated with the vote-by-mail provisions of S.B. 1 by enjoining the Secretary from "prescrib[ing] the design and content" of vote-by-mail application forms or mail-in-ballot carrier envelopes under section 31.002(a) of the Election Code. ROA.10601, 10672, 10736. But such an injunction would not free early voting clerks from their independent legal obligation under section 86.001 of the Election Code (which was amended by section 5.07 of S.B. 1) to "reject" an application that does not comply with the requirements of section 5.01 and 5.02 of S.B. 1. And it would not free signature verification committees or early voting ballot boards from their

independent legal obligation under sections 5.12, 5.13, and 5.14 of S.B. 1 to refuse to accept—and then provide an opportunity for the voter to cure—ballots whose mail-in-ballot carrier envelopes lack the information required by sections 5.08 or 6.07 of S.B. 1. *See TARA*, 28 F.4th at 673 & n.6; *Richardson*, 28 F.4th at 654.

For similar reasons, it is no answer to say that the district court could take a less drastic approach and simply enjoin the Secretary from making space on the vote-by-mail application forms or mail-in-ballot carrier envelopes for the information required by sections 5.01, 5.02, 5.08, and 6.07, which he is required to do by section 5.03 and 5.08. Voters would *still* be obligated under state law to provide the information required by sections 5.01, 5.02, 5.08, and 6.07 to have their vote-by-mail application accepted and ballot counted, because state law independently requires the early voting clerk or early voting ballot board to reject nonconforming applications or ballots. *See* Tex. Elec. Code §§ 86.001(f), (f-1), (f-2), 87.041(b).

Lastly, an injunction forbidding the Secretary to prescribe a roster form on which a local "election official" records the name and type of identification provided by a voter who drops off a mail-in ballot in person would not remedy the constitutional violation that plaintiffs allege concerning section 4.12. The thrust of plaintiffs' complaint is *not* that the Secretary prescribes a roster form on which a local official records information; it is that section 4.12 prohibits the use of unmanned ballot drop boxes. Indeed, plaintiffs allege that "[s]ection 4.12 . . . prohibits counties from offering drop boxes that are not staffed by an election official to collect this information from voters at the time they drop off their ballot," and that this "restriction[] on ballot drop boxes will also contribute to longer lines at the polls by reducing yet

another opportunity to vote outside of Election Day." ROA.6207. But enjoining the Secretary from prescribing the roster form will not remedy this alleged harm, because "election official[s]" are independently required under section 4.12 to "receive[]" "[a]n in-person delivery of a marked ballot . . . at the time of delivery." Tex. Elec. Code § 86.006(a-2). An injunction prohibiting the Secretary from prescribing the roster form will not free local election officials to ignore this independent legal obligation.

*Texas Democratic Party v. Abbott* is not to the contrary. There, this Court held that the Secretary was sufficiently connected to a statute that allowed voters 65 and over to vote by mail, in part because of the Secretary's duty to design the mail-in-ballot application form—a form that local officials were required to use. *TDP I*, 978 F.3d at 179-80. But in this case, unlike in *TDP I*, "[p]laintiffs challenge not the . . . forms themselves but how local officials" use them. *Richardson*, 28 F.4th at 654 n.9. After all, the gravamen of plaintiffs' complaints about the voter-assistance provisions of S.B. 1 is that requiring a voter assistor to provide the information required by sections 6.01 and 6.03 "may have a chilling effect on individuals providing assistance to voters," ROA.6211-12, or "deter individuals from giving these rides, further reducing access to voting for voters who need assistance," ROA.6635. And their complaints about the early voting process are centered on concerns that a vote-by-mail application or mail-in ballot itself will be "reject[ed]" for failure to comply with the substantive requirements of S.B. 1. ROA.6206-08; *see also* ROA.6641, 6294-99. Thus, plaintiffs' complaints are *not* about the use of a form; they are about the fact that this information is even collected or required in the first place. After all,

presumably, plaintiffs would continue to object to these provisions if election officials were charged with collecting this information orally.

In other words, plaintiffs' complaints are about the "processes" surrounding use of these forms—not the forms themselves; but the duty to use these forms to see that the substantive provisions of S.B. 1 are enforced falls "on local officials, not the Secretary." *Richardson*, 28 F.4th at 654.

### b. Promulgating rules.

The district court also held that the Secretary enforces eleven[13] other sections of S.B. 1 because the Election Code empowers the Secretary to promulgate rules, guidelines, or programs to facilitate the implementation of certain requirements concerning voter registration, the conduct of elections, poll watchers, and single-choice straight-ticket voting. ROA.10598-10600, 10607-10, 10677, 10741-43. Under the district court's reasoning, enjoining the Secretary from promulgating rules, guidelines, or programs on these topics would "compel or constrain local officials, who, in turn, must abide by the Secretary's rules." ROA.10610, 10743; *see also* ROA.10607, 10609.

But as an initial matter, "[o]ffering advice, guidance, or interpretive assistance does not compel or constrain local officials," *Richardson*, 28 F.4th at 655, so this theory of enforcement fails at the outset. Regardless, this theory is built on the same faulty premise as the first one: an injunction prohibiting the Secretary from exercising his authority to adopt rules, guidelines, or programs would not remedy the constitutional violations alleged.

_____

[13] Sections 2.05, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.07, 5.10, and 6.01.

Consider, for example, the district court's proposed injunction "prohibiting [the Secretary] from adopting rules and establishing procedures that are necessary to implement the elimination of straight-party voting" under Texas Election Code section 31.012(d). ROA.10607. That would not remedy any constitutional violation by local officials acting under section 3.15 of S.B. 1, because local officials are independently obligated under section 3.15 to prepare ballots in a manner that does not allow single-choice straight-ticket voting regardless of whether the Secretary promulgates rules under section 31.012(d) of the Election Code. Indeed, this Court has already recognized as much by rejecting a nearly identical argument earlier this year and holding that the Secretary's general duty under section 31.012(d) did not "make[] the Secretary the 'enforcer'" of a separate statute that repealed straight-ticket voting. *TARA*, 28 F.4th at 673.

For similar reasons, an injunction "[d]irecting the Secretary not to adopt or to modify rules implementing sections 3.04, 3.09, 3.10, 3.12, 3.13, and 4.01" pursuant to his authority under section 66.004 of the Election Code, ROA.10610, 10643, would "not stop any ongoing constitutional violation," *TARA*, 28 F.4th at 672, associated with local officials' implementation of those six provisions of S.B. 1. The district court's proposed injunction might bar the Secretary from "adopt[ing] rules and creat[ing] a checklist or similar guidelines to assist the presiding judge of a polling place in . . . conducting procedures required by this code at the opening and closing of the polling place." Tex. Elec. Code § 66.004. But such an injunction would not relieve the presiding judge, early voting clerk, commissioners court, and other local officials of their obligation to enforce section 3.04's prohibition on motor

41

voting, section 3.08, 3.09, and 3.10's early voting procedures, section 3.12 and 3.13's mobile-voting prohibition, and section 4.01's restrictions on removing poll watchers—all of which exist independent of any guidelines that the Secretary might choose to issue.

Likewise, enjoining the Secretary from "prescrib[ing] rules for the administration of" section 16.0332 of the Election Code, S.B. 1 § 2.05, would not remedy the constitutional violation alleged. Even if the Secretary's rulemaking authority were taken off the table, voter registrars would *still* be independently required under section 2.05 of S.B. 1 to request proof of citizenship from registered voters if the registrar becomes aware they may lack it.

Nor can the district court eliminate the specter of future "voter and election official intimidation from poll watchers" that is purportedly made more likely by sections 4.07 and 6.01 via an injunction "requiring [the Secretary] to instruct poll watchers through his training program that their poll watching activities must satisfy constitutional standards." ROA.10609, 10742. Plaintiffs' chief complaint regarding sections 4.07 and 6.01 is centered on the hypothetical conduct of unspecified, future poll watchers at polling places. ROA.6209-10, 6635-36. But contrary to the district court's assertion, the Secretary does not "compel or constrain" poll watchers' conduct at polling places by *ex ante* exhortations during a training program. ROA.10609, 10741-42. Instead, the Election Code plainly vests that precinct-level enforcement authority at polling places in the presiding judge, clerks, or law enforcement. *See generally* Tex. Elec. Code § 32.075. So once again, the district court's proposed

injunction "would not afford the Plaintiffs the relief that they seek, and therefore, the Secretary of State is not a proper defendant." *Richardson*, 28 F.4th at 654.

Finally, enjoining the Secretary from fulfilling his duty under section 5.10 to modify the online tracking tool for mail-in-ballot applications and ballots to include a space allowing plaintiffs to enter the new information required under S.B. 1, ROA.10677, would not remedy the harm alleged. Plaintiffs' chief complaint with the vote-by-mail provisions of S.B. 1 is that they require the provision of additional information that certain voters may not possess and, therefore, those voters' applications or ballots might be rejected. ROA.6294-6303. But plaintiffs do not specifically take issue with section 5.10 or the online tracking tool; they merely say that the ability to cure defects on a vote-by-mail application online is insufficient because voters may not have the required information in the first place. ROA.6298. Therefore, prohibiting the Secretary from modifying the online application tool will not remedy the alleged harms, which stem from other sections of S.B. 1.

### c. Reporting violations of law

*Lastly*, the district court held that the Secretary enforces fifteen[14] other provisions of S.B. 1 that define new crimes under the Election Code, prohibit certain conduct by local officials, or require the Secretary to share information with other officials. ROA.10599-10600, 10610-15, 10677, 10733-35, 10743-47. The Court reasoned that the Secretary enforces these fifteen sections of S.B. 1 because two provisions of

---

[14] Sections 2.04, 2.06, 2.07, 2.08, 4.06, 4.09, 5.04, 5.06, 5.11, 6.04, 6.05, 6.06, 7.02, 7.04, and 8.01.

the Election Code (Tex. Elec. Code §§ 31.006(a), 34.005(a)) authorize or require the Secretary to refer information to the Attorney General about violations of the Election Code, which might, in turn, make voters or local officials subject to criminal or civil prosecution. ROA.10614-15, 10677, 10746-47. The Court concluded that "[a]n injunction prohibiting the Secretary from referring or reporting offenses under these provisions would certainly help alleviate th[is] harm," thus making the Secretary a proper *Ex parte Young* defendant. ROA.10614, 10746.

But plaintiffs' complaint is not with the Secretary's sharing of information with the Attorney General or local prosecutors as such; instead, plaintiffs complain that the Secretary's sharing of information might lead to their subsequent prosecution by *another official* with prosecuting authority. ROA.6204-06, 6209-14, 6636-39, 6642-46. Even if the mere act of sharing information with the Attorney General or local prosecutors were the gravamen of plaintiffs' complaints, "refer[ring]," Tex. Elec. Code §§ 31.006(a), 34.005(a), information about violations of law to the Attorney General or a local prosecutor "does not compel or constrain anyone to obey the challenged law," *TARA*, 28 F.4th at 672—only an enforcement action would have that compulsive effect, and the Secretary is not empowered to institute criminal or civil prosecutions. *See Lewis*, 28 F.4th at 664. As a result, the Secretary would be at least one step removed from any enforcement of the substantive provisions of law that plaintiffs speculate might be enforced against them. Yet this Court's "case law is clear that it is not enough that the state official was merely the but-for cause of the problem that is at issue in the lawsuit," which is the most that the plaintiffs can allege

here. *Tex. Democratic Party v. Hughs*, 860 F. App'x 874, 877 (5th Cir. 2021) ("*TDP III*") (citing *TDP II*, 978 F.3d at 181).

For these reasons, the district court was wrong to conclude that the Secretary's reporting obligations make him the "enforcer" of the criminal prohibitions in sections 4.06, 4.09, 6.04, 6.05, 6.06, 7.02, and 7.04, the civil-penalty provisions of sections 2.06, 5.04, 5.06, 5.11, and 8.01,[15] or the information-sharing requirements of sections 2.04, 2.07, and 2.08.

### 3. The Attorney General does not have an ability or demonstrated willingness or to enforce the challenged provisions.

In addition to the Secretary, plaintiffs separately allege that the Attorney General enforces thirty-six[16] sections of S.B. 1. The district court held that he enforces thirty of those sections, locating this purported enforcement authority in two provisions of Texas law. ROA.10619-28, 10681-90, 10752-61. The first is Texas Election Code section 273.021(a), which states that "[t]he attorney general may prosecute a criminal offense prescribed by the election laws of this state." Via this criminal-

---

[15] Unlike in sections 2.06 and 8.01, sections 5.04, 5.06, and 5.11 do not themselves contain a provision authorizing civil penalties. Nevertheless, the district court concluded that an election officer who violates these provisions could be liable to the State for a civil penalty through the mechanism provided by section 8.01. ROA.10614-15, 10677.

[16] Sections 2.04, 2.05, 2.06, 2.07, 2.08, 2.11, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.06, 4.07, 4.09, 4.12, 5.01, 5.02, 5.03, 5.04, 5.07, 5.08, 5.11, 5.12, 5.13, 5.14, 6.01, 6.03, 6.04, 6.05, 6.06, 6.07, 7.02, 7.04, and 8.01. The district court concluded that the Attorney General does not enforce sections 2.08, 2.11, 5.02, 5.03, 5.08, and 6.07 of S.B. 1, so the State Defendants do not address these provisions. ROA.10621, 10754.

enforcement provision, the district court held, the Attorney General could enforce seven sections of S.B. 1: 4.06, 4.09, 6.04, 6.05, 6.06, 7.02, and 7.04. ROA.10620, 10682-83, 10752-53. The second enforcement mechanism identified by the district court was section 8.01 of S.B. 1, which makes any election official who "violates a provision of this code" "liable to th[e] state for a civil penalty." Tex. Elec Code § 31.129(b). Through this provision, the district court concluded, the Attorney General can enforce twenty-three provisions of S.B. 1 that "establish requirements for election officials": 2.04, 2.05, 2.06, 2.07, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.06, 4.07, 4.12, 5.01, 5.04, 5.07, 5.11, 5.12, 5.13, 5.14, 6.01, and 6.03. ROA.10620-21, 10753. But three problems with this analysis are readily apparent.

*First*, the Texas Court of Criminal Appeals recently held section 273.021 "unconstitutional" because its grant of unilateral prosecutorial authority to the Attorney General violated the Texas Constitution's Separation of Powers Clause. *State v. Stephens*, Nos. PD-1032-20, PD-1033-20, 2021 WL 5917198, at *1, *8 (Tex. Crim. App. Dec. 15, 2021), *reh'g denied*, 2022 WL 4493899 (Tex. Crim. App. Sept. 28, 2022). Accordingly, the district court's conclusion that the Attorney General can enforce sections 4.06, 4.09, 6.04, 6.05, 6.06, 7.02, and 7.04 of S.B. 1 through section 273.021 is simply wrong following *Stephens*.

Recognizing this dilemma, the district court theorized that the Attorney General might be deputized by a local prosecutor to assist with prosecutions of Election Code violations, an avenue expressly left open by *Stephens*. ROA.10626-28, 10686-89, 10759-61; *see also Stephens*, 2021 WL 5917198, at *9-10. But "[s]peculation that he might be asked by a local prosecutor to 'assist' in enforcing" criminal laws "is

inadequate to support an *Ex parte Young* action against the Attorney General." *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) (citing *City of Austin*, 943 F.3d at 1000), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. For Choice v. Abbott*, 141 S. Ct. 1261 (2021). The district court attempted to sidestep this holding by pointing to statements on the Attorney General's website about past and pending prosecutions of voter fraud since 2015 and by speculating that any currently pending prosecutions must be undertaken at the request of local prosecutors. ROA.10627-28, 10689, 10760-61. But the fact that that Attorney General may have assisted district or county attorneys in prosecuting different defendants under "*different* statutes under *different* circumstances does not show that he is likely to do the same here" with regard to these plaintiffs or under S.B. 1. *City of Austin*, 943 F.3d at 1002.

Nor can the Attorney General's public statements "tout[ing] his office's eagerness to prosecute entities and individuals . . . for criminal offenses under the Election Code," ROA.10626, 10687, support the argument that the Attorney General has a demonstrated willingness to prosecute election-law crimes post-*Stephens*: this Court's cases "do not support the proposition that an official's public statement alone establishes authority to enforce a law, or the likelihood of his doing so, for *Young* purposes." *TDP I*, 978 F.3d at 181.

*Second*, the Attorney General does not enforce section 8.01's civil-penalty provision either. As the district court acknowledged, "S.B. 1 does not specify whether the Attorney General may enforce section 31.129." ROA.10626, 10758. Though the district court inferred enforcement authority from that silence, Texas law mandates the opposite conclusion. The Texas Constitution generally splits the duty of

representing the State between the Attorney General and the district and county attorneys based on the court in which an action will be pursued. Tex. Const. art. IV, § 22; *id.* art. V, § 21. District and county attorneys "shall represent the State in all cases in the [d]istrict and inferior courts in their respective counties." *Id.* art. V, § 21. But the Attorney General's constitutional duties include representing the State in the Texas Supreme Court and in certain trial-court actions involving corporations and charters. *Id.* art. IV, § 22. And while the Legislature may assign "other duties," *id.*, to the Attorney General that may include representing the State in trial court despite that general assignment to district and county attorneys, *El Paso Elec. Co. v. Tex. Dep't of Ins.*, 937 S.W.2d 432, 438 (Tex. 1996), the Texas Supreme Court has generally required a clear statement that "expressly authoriz[es] the Attorney General, as well as any District or County Attorney, to institute and prosecute the statutory suit thus created," *Smith v. State*, 328 S.W.2d 294, 295 (Tex. 1959) (per curiam). But as the district court recognized, such a clear statement is not present in section 31.129.

*Third*, and even if the Attorney General could enforce section 8.01's civil-penalty provision, plaintiffs have not alleged any legally sufficient "demonstrated willingness" on the part of the Attorney General to enforce any of these provisions of state law against them, *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quoting *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (en banc)), much less that "formal enforcement [is] on the horizon," *TDP I*, 978 F.3d at 181 (quoting *NiGen Biotech, LLC v. Paxton*, 804 F.3d 389, 392 (5th Cir 2015)). Most notably, the Attorney General has taken an official position in the Texas Supreme Court that he does

not enforce section 8.01's civil-penalty provision. *See Paxton v. Longoria*, 646 S.W.3d 532, 541-42 (Tex. 2022). In holding to the contrary, the district court pointed to two indicia of the Attorney General's willingness to enforce the State's election laws: (a) the Attorney General's "broad investigatory powers," including under section 273.001(a); and (b) the Attorney General's involvement in "fil[ing] civil lawsuits against election officials" on behalf of the State. ROA.10626, 10758-59. Neither does.

An investigation, without more—such as a formal request for information or other type of demand for compliance—does not "compel or constrain anyone to obey" any law, so it cannot constitute "enforcement" within the meaning of *Ex parte Young*. *TARA*, 28 F.4th at 672; *cf. Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1124 (9th Cir. 2022) (dismissing as unripe a First-Amendment-retaliation claim based upon the Texas Attorney General's issuance of a civil investigative demand because he had not yet moved to enforce that demand), *pet. for reh'g en banc filed* Mar. 30, 2022; *Google, Inc. v. Hood*, 822 F.3d 212, 224-26 (5th Cir. 2016) (similar). Nor does the Attorney General's representation of the State in an original *mandamus* proceeding involving election-law claims in the *Texas Supreme Court* two years ago, *Hollins*, 620 S.W.3d at 400, demonstrate that he will enforce S.B. 1's *civil-penalty* provision against any of the plaintiffs in a *trial court*. Again, "that he has chosen to intervene to defend *different* statutes under different circumstances"—a highly irregular scheme by a lone county clerk in the midst of a once-in-a-generation pandemic to send mail-in ballot applications to all registered voter under 65 when state law did not authorize such an approach—"does not show that he is likely to do the same

here." *City of Austin*, 943 F.3d at 1002 (emphasis original); *cf. Hollins*, 620 S.W.3d at 403 ("No other election official in Texas is doing or has ever done what the Clerk proposes").

### B.  The VRA does not abrogate State sovereign immunity.

Although *OCA-Greater Houston* held that the VRA abrogates State sovereign immunity, 867 F.3d at 614, its perfunctory, one-sentence analysis of this issue is wrong. "Congress did not unequivocally abrogate state sovereign immunity under Section 2 of the Voting Rights Act." *Ala. State Conference of the NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020) (Branch, J., dissenting). Nor did it do so in section 208. When the VRA authorizes relief against States, it does so through suits brought by the United States Attorney General, *see, e.g.*, 52 U.S.C. § 10308(d), which the Supreme Court has held are not subject to sovereign immunity. *See West Virginia v. United States*, 479 U.S. 305, 311 n.4 (1987); *United States v. Mississippi*, 380 U.S. 128, 140 (1965). Despite this, the State Defendants recognize that the panel is bound by *OCA-Greater Houston*, and they raise this argument to preserve their right to request reconsideration by the *en banc* Court.

## II.  Plaintiffs Lack Standing to Sue the Secretary or the Attorney General.

For many of the same reasons that they cannot overcome sovereign immunity, plaintiffs also lack standing to bring any of their claims against the Secretary or the Attorney General. To establish standing under Article III, plaintiffs must prove that (1) they have suffered an "injury in fact," which is (2) fairly traceable to the enforcement of the specific challenged provision, and (3) likely to be redressed by a favorable

decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). At the pleading stage, plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted). And because "[s]tanding is not dispensed in gross," plaintiffs must plausibly allege "standing to challenge *each provision* of law at issue." *In re Gee*, 941 F.3d 153, 161-62 (5th Cir. 2019) (per curiam) (emphasis added).

"This court has acknowledged that [its] Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin*, 943 F.3d at 1002. And where, as here, standing is premised on enforcement authority, the plaintiff must "assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future." *California*, 141 S. Ct. at 2114. Without that showing, the plaintiff cannot show traceability. *Id.* at 2113-14. To be sure, the analyses are distinct, *see TARA*, 28 F.4th at 674, but here standing is lacking for the same reason that plaintiffs cannot meet the *Ex parte Young* exception to sovereign immunity: neither the Secretary nor the Attorney General enforces the challenged provisions of S.B. 1.

**A.**  As described above, the challenged voter-registration provisions of S.B. 1, Article 2 are not enforced by the Secretary or the Attorney General. *Supra* at 28-29. Section 2.04 is plainly enforced by the county voter "registrar," who is required by that section to share any information with the Secretary, Attorney General, and local prosecutors that indicates an individual who is not eligible to vote nonetheless is registered to vote or has voted. S.B 1 § 2.04. Similarly, sections 2.05, 2.06, 2.07, and 2.08 are all information-sharing requirements that require the Secretary to transmit

information to DPS, voter registrars, and the Attorney General in certain circumstances. *Id.* §§ 2.05, 2.06, 2.07, 2.08.

Plaintiffs cannot and do not contend that the mere sharing of information between government officials, without more, results in a concrete, particularized injury to them. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (describing "concrete" harms as consisting of "tangible harms, such as physical harms and monetary harms" and "[v]arious intangible harms" that are "traditionally recognized as providing a basis for lawsuits in American courts."); *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 937 (5th Cir. 2022). Instead, they speculate about the prospect of "prosecution," ROA.6644-46, and the burdens associated with providing proof of citizenship, ROA.6198-99. Yet neither the Secretary nor the Attorney General is charged with criminally prosecuting offenses under these (or any other) sections of S.B. 1. *Supra* at 31, 34, 44-47. And to the extent that plaintiffs are injured by the requirement to produce proof of citizenship upon request, section 2.05 plainly states that it is the county voter "registrar" tasked with making that request. S.B. 1 § 2.05. Lastly, even though section 2.06 contains a provision authorizing the Attorney General to collect a civil penalty from voter registrars who repeatedly violate voter-registration provisions of the Election Code, none of the plaintiffs or their members is alleged to be a voter registrar, so plaintiffs cannot claim the mere existence of this provision harms them in any "particularized" way because it does not "affect the plaintiff[s] in a personal and individual way." *Spokeo*, 578 U.S. at 339.

Likewise, the provisions of Article 3 governing the conduct and security of elections, the vote-by-mail provisions of Article 5, and the voter-assistance provisions of

Article 6 are enforced at the precinct- or county-level by local election officials, such as commissioners courts, early voting clerks, election judges, early voting ballot boards, and signature verification committees—not the Secretary or Attorney General. *Supra* at 29-34. Plaintiffs do not seriously dispute this, and their complaints fail to explain what kind of "action or conduct" by the Secretary or Attorney General "has caused or will cause the[ir] injury." *California*, 141 S. Ct. at 2114. Plaintiffs allege that the provisions of Article 3 and Article 6 may result in their having fewer opportunities to vote in-person, and they fret about the possibility that Article 5's provisions might result in the rejection of mail-in-ballots or ballot applications. ROA.6199-6208, 6211-13, 6294-6303, 6631-35, 6640-41. But once again, any such injuries would be traceable to local election officials' enforcement of these provisions, not any conduct by the Secretary or Attorney General. *Supra* at 29-34.

Finally, the challenged provisions of Article 4 governing the conduct of election officials and Articles 7 and 8 creating new election-law offenses are enforced by local prosecutors, not the Secretary or Attorney General. *Supra* at 34-35. The district court appeared to recognize this, but concluded that the Attorney General might assist local prosecutors upon their request. Yet that argument rests on a highly speculative chain of events, including that: (1) a district or county attorney will decide to prosecute members of one of the organizations bringing this challenge under one of the provisions challenged; (2) the county or district attorney will seek the assistance of the Attorney General; and (3) the Attorney General will agree to provide such assistance. Reliance on this "speculative chain of possibilities" is insufficient to establish that any prosecutorial injury "is certainly impending or is fairly traceable."

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). Moreover, given that the first and second links in this chain of contingencies would require "guesswork as to how independent decisionmakers will exercise their judgment," this Court should "decline to abandon [the] usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* at 413-14.

**B.** The district court arrived at the opposite conclusion on the question of traceability principally by relying on *OCA-Greater Houston*. ROA.10654-56, 10714-17, 10784-87. There, a plaintiff argued that her rights under section 208 of the VRA were violated when a county election official turned away her interpreter because he did not meet the Election Code's interpreter-residency requirement. 867 F.3d at 608-09. Even though this requirement was enforced against the plaintiff by a *county official*, the panel nevertheless concluded that her injury was traceable to the Secretary solely by virtue of his role as "chief election officer of the state" and his general duty to "obtain and maintain uniformity in the application, operation, and interpretation of this code." *Id.* at 613-14 (citing Tex. Elec. Code §§ 31.001(a), 31.003).

*OCA-Greater Houston* cannot bear the weight the district court placed upon it. Initially, the Court's breezy analysis fails to "point[] to any way in which the defendant[]"—there the Secretary—"will act to enforce" the residency requirement; nor does it identify any "action or conduct" flowing from the Secretary's role as "chief election officer" that "has caused or will cause the injury." *California*, 141 S. Ct. at 2114. Because *OCA-Greater Houston* fails to apply the traceability standard in the way the Supreme Court has articulated it, the decision is simply not instructive on that issue. But even if it were instructive, its reach is necessarily limited by the fact

that plaintiffs must demonstrate "standing to challenge *each provision* of law at is-sue," *In re Gee*, 941 F.3d at 161-62, and *OCA-Greater Houston* only considered one provision of the Election Code, as compared to the more-than-three-dozen provi-sions at issue here. Accordingly, that case simply could not have established the proposition that any injury under a provision of the Election Code is traceable to the Secretary.

## Conclusion

The Court should reverse the district court's orders concluding that plaintiffs' section 1983 claims can proceed against the Secretary and the Attorney General under the *Ex parte Young* exception to sovereign immunity and that plaintiffs established Article III standing to sue the Secretary and the Attorney General.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

/s/ William F. Cole
William F. Cole
Assistant Solicitor General
William.Cole@oag.texas.gov

Counsel for Defendants-Appellants

## CERTIFICATE OF SERVICE

On December 9, 2022, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ William F. Cole
WILLIAM F. COLE

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)—which was extended by 2,000 words by order of the Court—because it contains 14,997 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ William F. Cole
WILLIAM F. COLE